1  DENISE K. TOP  State Bar No. 238961
   E-mail:  denise@toplawpc.com
2  TOP LAW PC
   180 Grand Avenue, Ste. 1300
3  Oakland, CA  94612
   Tel:  (510) 319-9000
4  Fax:  (510) 319-9920

5  Attorneys for Plaintiffs
   Catherine "Cassie" Davis and Julia Rhodes
6

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9                 SAN FRANCISCO DIVISION

10 CATHERINE "CASSIE" DAVIS and     )   Case No. 21-cv-3779
   JULIA RHODES,                    )
11                                  )   **COMPLAINT FOR DAMAGES**
              Plaintiffs,           )
12                                  )   DEMAND FOR JURY TRIAL
       v.                           )
13                                  )
   INMAR, INC. and DOES 1-10,       )
14 inclusive,                       )
                                    )
15            Defendants.           )
                                    )
16                                  )
                                    )
17 _____ )

18          **I.      NATURE OF THE ACTION**

19        This is an individual action brought by two employees against their former

20 employer, Inmar, Inc., alleging violations of the California Fair Employment and

21 Housing Act.  Specifically, Plaintiff Catherine "Cassie" Davis alleges Defendant violated

22 the law by discriminating against her on account of her gender/sex.  Plaintiff Davis also

23 alleges claims for retaliation for reporting discriminatory conduct, for denial of equal pay

24 and wrongful termination in violation of public policy.  Plaintiff Julia Rhodes alleges that

25 Defendant violated the law by discriminating against her on account of her gender/sex,

26 retaliation for reporting discriminatory conduct, denial of promotion based on gender/sex,

27 and wrongful termination in violation of public policy.

28

## II.   PARTIES

1.     Plaintiff Catherine "Cassie" Davis ("Davis") was at all times relevant herein, a resident of Alameda County, California and worked for Inmar, Inc. out of its San Francisco office, located in Daly City, California.

2.     Plaintiff Julia Rhodes ("Rhodes") was at all times relevant herein, a resident of San Carlos, California and worked for Inmar, Inc. out of its San Francisco office, located in Daly City, California.

3.     According to its website, Defendant Inmar, Inc. ("Defendant" or "Inmar") does business as Inmar Intelligence and "develops technology and uses advanced data analytics to make commerce work smarter." Inmar has local offices nationally located, including offices in Daly City, California, and remote/home offices in the following California cities: San Jose, Fresno, Modesto, Los Angeles, Sacramento, and Fullerton. Inmar acquired approximately 80 California employees from YouTech in or about March 2019.

## III.   JURISDICTION AND VENUE

4.     The U.S. District Court for the Northern District of California has personal jurisdiction over Defendant because Inmar has offices in California and does business in California, and many of the acts complained of and giving rise to the claims alleged herein occurred in California.

5.     This Court has subject matter jurisdiction over the Claims under the EPA pursuant to 28 U.S.C. § 1331 and 1343. These claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

6.     This Court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## IV.   INTRADISTRICT ASSIGNMENT

7.     Intradistrict assignment in the San Francisco Division of the Northern District of California is proper as the action arises from conduct that primarily occurred

in San Mateo County, California (where Plaintiffs were employed and where their employment was terminated) pursuant to Norther District Civil Local Rule 3-2(d).

## V.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.   On or about May 20, 2020, Plaintiff Rhodes filed a timely charge of discrimination, harassment, and retaliation with the Department of Fair Employment and Housing ("DFEH") and an amended timely charge on May 18, 2021.  The DFEH issued right-to-sue letters on the initial charge on May 20, 2020 and on the amended charge on May 18, 2021.  A copy of the complaint and of the notice of right-to-sue is attached hereto as Exhibit A.

9.   On or about May 19, 2021, Plaintiff Davis made a timely charge of discrimination, harassment, and retaliation with the DFEH.  The DFEH issues a right-to-sue letter on this charge on May 19, 2021.  A copy of the complaint and of the notice of right-to-sue is attached hereto as Exhibit B.

## VI.   FACTUAL ALLEGATIONS

### A. Inmar's Male-Dominated Hierarchy

10.   Men dominate Inmar's leadership and management.  Women hold only one of six seats on Inmar's Board of Directors and two of nine Officer positions.

11.   Inmar discriminates against women by permitting its predominantly male leadership to favor men overtly in pay, title, promotions, and other opportunities regardless of their qualifications and to otherwise discriminate against women. Inmar leadership fosters or condones a workplace culture that marginalizes, demeans, intimidates, overworks and undervalues women.

12.   Upon information and belief, Inmar is aware of the company's inequitable pay, promotion, job assignment, and other practices, but have taken no steps to remedy the root causes of the disparity. Upon further information and belief, Inmar has been aware of its misconduct yet has failed to rectify the discrimination and actively sought to

avoid the changes necessary to comply with the law.

**B. Factual Allegations Related to Plaintiff Davis**

13.     In or about March 2004, Plaintiff Davis started working for SoftCoin as a Creative Director.  In or about 2009, You Technology acquired SoftCoin and Plaintiff Davis, as an executive-level employee.

14.     Plaintiff Davis was instrumental in establishing and developing You Technology's suite of products and services leading a team of designers and front-end engineers. She also over saw corporate marketing and spearheaded the rebranding of the company (to YouTech), designing a new logo and overhauling the strategic positioning, narrative and messaging.

15.     In or about March 2019, Inmar acquired YouTech.  As part of the acquisition, Inmar offered Plaintiff Davis a position with Inmar as Vice President, Strategic Services, which she accepted.  Inmar also acknowledged Plaintiff Davis' original hire date in March 2004 to be her recorded serve date known at Inmar.  Plaintiff Davis continued to report to her previous YouTech supervisor (a woman), who during the YouTech acquisition was demoted from YouTech CEO to a Vice President at Inmar.

16.     From the start, the male dominated, and male oriented Inmar work culture became a clear obstacle for Plaintiff Davis to establish her role and position within Inmar, despite her many years of experience and highly cross-functional background in leadership, design, marketing and development.  For instance, there were open discussions about certain senior (male) leaders having a "type" in regard to women they prefer to work with and that these women tended to fit a certain stereotype.  It was well known amongst female employees that senior leaders (all male) only wanted to hear from male colleagues and that female employees would be most effective if they passed information through a straight, white, male colleague.  Plaintiff Davis reported what she believed to be gender discrimination to her supervisor on multiple occasions.  Plaintiff is informed, believes, and thereon alleges that Inmar did nothing to respond to these known gender inequality issues.

17.     Months after Inmar acquired YouTech, Plaintiff Davis inadvertently discovered that Inmar had demoted her to a Director level employee, despite providing her a written offer letter designating her a Vice President. Inmar did nothing to adjust the job assignments, job responsibilities, or work volume related to Plaintiff Davis' assigned workload; nor did it notify her of this change in personnel status, and she continued producing and ideating work at a Vice-President level.

18.     Week after week Plaintiff Davis' one-on-one meetings with her supervisor were canceled and she found herself excluded from calls, often involving review or discussion of work she had produced or ideated.  Plaintiff Davis was being actively excluded and isolated; she did not receive credit for her work. Plaintiff is informed and believes and thereon alleges, at least one male colleague took credit for her work, which she reported to her supervisor. When Plaintiff Davis raised concerns about what she reasonably believed to be unfair treatment, including but not limited to isolating and/or exclusionary behavior, she was consistently assured by her supervisor and/or executive leadership of her job security.  Plaintiff relied on these assurances and continued to devote her all her work efforts to Inmar. Moreover, Plaintiff Davis' supervisor confirmed it was a white, male, dominated work culture and provided tips on how to work within that known structure, so as to try to manipulate the white, male leadership.  Plaintiff is informed, believes, and thereon alleges that nothing further was done to address the known, established gender discrimination and disparity in the workplace.

19.     Plaintiff Davis' supervisor represented that she was working on a position for Plaintiff Davis that sat above three business units and focused on solutions that combined products, representing a higher level and cross-divisional role, designed to unify go to market strategy and positioning and to own retail and brand narratives. Plaintiff trusted and relied on her supervisor's representations that senior leadership was working to elevate Plaintiff Davis and her strengths/skills to head up product in a senior leadership role.

20.     In or about early 2020, after the COVID pandemic hit, Plaintiff Davis was

told that a company-wide reduction in salaries would spare layoffs.  She questioned the company's proclaimed "COVID" motive, given Inmar's focus on tech-enabled services for retailers in the grocery sector- an industry undergoing rapid digital transformation and growth as a result of COVID. She also questioned the tiered salary reduction plan to have obvious discriminatory impact on the higher-level women working in the SF/Bay Area. Plaintiff Davis shared her disappointment/concerns with her supervisor, whom to Plaintiff is informed, believes and thereon alleges, did nothing about it.

21.    Within weeks of raising these concerns, Inmar notified Plaintiff Davis that the company decided to lay her off, along with the other highest level female leader in the San Francisco office.  Plaintiff Davis was told Inmar did not like how much she was making.  Plaintiff Davis is informed, believes, and thereon alleges male colleagues of equal rank to have successfully negotiated and established roles within Inmar; while female counterparts worked tirelessly, with little recognition or promotion.  Plaintiff Davis is informed, believes, and thereon alleges these male colleagues were spared layoff selection, despite also living in the same or similar city centers where salaries are justifiably higher due to the added cost of living.  Some of these male colleagues and the divisions they work within suffered far higher personnel expenditure and far less revenue contributions than Plaintiff Davis' division--the retail commerce platform division. Plaintiff Davis asserts at a budget review meeting, in or about January 2020, her division demonstrated perhaps the lowest personnel expenditure within the company and one of the top gross revenues, yet her division was the main focus of what Inmar characterized as COVID-19 related lay-offs.  Plaintiff asserts the demographic makeup of the layoff selections to be pretextual as they captured high-earning and vocal women, minorities, and white employees over the age of 50.

22.    Plaintiff Davis is further informed, believes, and thereon alleges that a white, male colleague, in the San Francisco office, was spared layoff, and remained employed at a Director-level designing product—a skill set in which Plaintiff Davis has demonstrated experience.

23.     During layoffs Inmar informed Plaintiff Davis that there would be no new development for her division due to COVID.  Indeed, this was the reason Inmar provided as the basis for her termination; however, prior to termination Plaintiff Davis was producing work across divisions.  In addition, a May 2020 Inmar press release announced Inmar's appointment of an executive in residence (male) tasked to help "guide and accelerate the development of solutions across marketing…and accelerate the industry's digital transformation," which evidences Inmar's efforts to ramp up its development to meet the demand of retail grocer digital coupon savings and digital marketing initiatives amid a pandemic.

24.     Plaintiff Davis has knowledge of at least one male colleague, performing substantially similar work, living in a more affordable city, who was compensated more than what Inmar paid her as a woman living and working in the San Francisco, Bay Area.  After Inmar notified Plaintiff Davis of her layoff, she requested salary information for Vice President and Director-level, male employees at Inmar by office location.  Inmar refused or failed or neglected to provide Plaintiff Davis with this requested information pertaining to Inmar's pay practices.

25.     The first pay period that Inmar was to institute Plaintiff Davis' 25% salary reduction due to COVID, Inmar terminated Plaintiff Davis.  Her termination was effective April 16, 2020.  Her last paycheck issued at a 25% salary reduction. Inmar also paid out Plaintiff Davis' accrued vacation at the reduced salary reduction rate, despite her having accrued nearly all those wages at her pre-COVID rate of pay.

26.     Plaintiff asserts Inmar lifted the tiered salary reduction plan for all employees in or about the end of the second quarter of 2020.

**C. Factual Allegations Related to Plaintiff Rhodes**

26.     You Technology hired Plaintiff Rhodes in August 2016, as Vice President, Product Management, reporting to the CEO, Cheryl Black.  In or about November 2018 as a result of You Technology's acquisition by Inmar, Inc., Plaintiff Rhodes received a job offer from Inmar for a Director, Product Management role, reporting to Ms. Black,

who was also demoted from a CEO position to a Vice-President role at Inmar.  Plaintiff Rhodes understood her role with Inmar to be substantially similar to my work for You Technology and was told that the down-leveling was a common practice for Inmar across the board. Plaintiff Rhodes relied on this representation and subsequently accepted the job offer and her employer transitioned from You Technology to Inmar.

27.     During her employment with Inmar, Plaintiff Rhodes came to believe her position was unfairly "leveled" due to her gender.  Plaintiff Rhodes observed this Inmar practice towards other similarly situated employees. Notably, just prior to Plaintiff Rhodes' termination, she was actively engaged in discussions with her supervisor, Cheryl Black, regarding the fact that she believed she was being unfairly "leveled" when compared to her male peers and even lower-level, male employees. Indeed, Inmar required Plaintiff Rhodes to manage male employees that were given the same title level as her own. As a Inmar Director, Plaintiff Rhodes was responsible for about $250 million in revenue across two business units, Retail Commerce Platform and Fintech, and was responsible for approximately 40% of Inmar's overall revenue.  Plaintiff never received an increase in level or pay to reflect the increase in scope and responsibility of her role and her title and role within the company (Director, Product Management) was disproportionate even to those who directly reported to her, including but not limited to the male employee who held the Director, Consumer & Influencer Solutions role. Plaintiff Rhodes also held a lower title than her male counterpart on the Media side of the Business, the Sr. Vice President, Consumer & Influencer Solutions, even though his responsibility was limited to one business unit and substantially less revenue than Plaintiff Rhodes' two business units. In no uncertain terms, Plaintiff Rhodes expressed to Supervisor Black that this gender-based discrimination had to be resolved.

28.     Plaintiff Rhodes' supervisor repeatedly represented to Plaintiff Rhodes over the course of months that she was actively working with HR to promote Plaintiff Rhodes to a title and position commensurate with her job responsibilities and assignments. Plaintiff Rhodes' supervisor represented that she would prioritize the work needed on her

end to make it happen because Plaintiff Rhodes deserved the promotion.  Plaintiff Rhodes relied on these representations and continued to devote her efforts to Inmar.

29.     Despite Inmar's stated committed to equal opportunity employment and non-discrimination policies based that represent a strong statement and commitment that all employees would be treated equally in all aspects of employment, including equal recognition and pay for equal work and performance, Plaintiff Rhodes observed discriminatory "leveling" of female employees, and other forms of discrimination rampant among Inmar's male-oriented, male-dominated culture. Plaintiff Rhodes observed and experienced gender-driven discriminatory practices at Inmar, including but not limited to:

- Senior male leaders having intimate relationships with women within their organizations;

- Several male employees told Plaintiff Rhodes that male, senior leaders (including the CEO) had a "type" in regard to women they prefer to work with and warned Plaintiff Rhodes to "watch out" because "[she was] not his type";

- Open discussion amongst female employees that male, senior leaders only wanted to hear from male colleagues and that as women it is most effective to pass information through a straight, white, male colleague.  Plaintiff Rhodes directly experienced this when her skip-level manager, another male senior leader at the company, openly stated in a face-to-face meeting in the Daly City office that receiving updates on development from Plaintiff Rhodes "wasn't going to work for him" and he instead wanted to receive them from a male counterpart despite that person not being involved in or familiar with any details of the project;

- Culture where men act as though org changes are optional and women are regularly demoted or kept in positions not commensurate with their contributions and experience;

- Concern from Plaintiff Rhodes' male, skip-level manager about whether a male member of the org would agree to work for Plaintiff Rhodes, despite her

having more experience than him in product management with a greater track record of success;

     • One of Plaintiff Rhodes' male direct report's being notified of org changes (prior to her termination) and openly discussing future reorg with his direct reports in a way minimized and undermined Plaintiff's position within the company;

     • Plaintiff's termination when both male counterparts and male direct reports were retained despite their lines of business bringing in less revenue overall and missing revenue targets;

     • Women being paid less than men for substantially similar work when viewed as a composite of skill, effort, and responsibility;

     • Women being denied opportunity for advancement due to taking parental leave.

Plaintiff Rhodes asserts these discriminatory practices, among others, were known to senior leadership. She herself raised them to her supervisor multiple times, with no known action taken on behalf of the company to address the discriminatory practices and resulting inequitable impacts on Inmar's workforce.

30.    In or about early April 2020, Inmar denied Plaintiff Rhodes' attempt to promote a pregnant direct report because the direct report was going out on pregnancy leave. Plaintiff Rhodes reported to HR that she believed Inmar was engaging in discriminating practices by denying a promotional opportunity because of parental leave. Shortly thereafter, Plaintiff Rhodes received notice that she would be laid off from Inmar effective April 16, 2020 under what Plaintiff Rhodes asserts was the pretext of the COVID pandemic.

31.    Although Inmar told Plaintiff Rhodes the layoff due to the COVID-19 pandemic hardship, Inmar's CEO later advised in a recorded company-wide meeting that the terminations had been planned before the pandemic, but the pandemic "accelerated" and allowed for an excuse for some of the terminations. Plaintiff asserts Inmar used the excuse of the pandemic as a pretext to terminate executive-level, high performing female

employees, while it retained poorer performing male employees with reduced performance metrics.  For example, CEO David Mounts specified that inflow and outflows would have to match throughout the various areas of the company; however, Plaintiff Rhodes' business unit was closest to meeting its EBITDA targets, while other divisions that missed their Q1 targets and had higher personnel expenditures did not experience terminations.

32.     Inmar also told Plaintiff Rhodes another reason for her termination was the company was going to focus on technical work, with no new feature development in 2020.  However, less than a month after my termination date, Inmar issued a press release describing an expansion of its executive team with the appointment of Spencer Baird (male) as Executive In Residence to "guide and accelerate the development of solutions across marketing, commerce and operations to facilitate and accelerate the industry's digital transformation."  This announcement describes a role Plaintiff Rhodes could have filled; but instead, Inmar laid her off and hired an external, male candidate for the position.

33.     The first pay period that Inmar was to institute Plaintiff Rhodes' 25% salary reduction due to COVID, Inmar terminated her employment. Plaintiff Rhodes' termination was effective April 16, 2020.  Her last paycheck issued at a 25% salary reduction. Inmar also paid out Plaintiff Rhodes' accrued vacation at the reduced salary reduction rate, despite her having accrued nearly all those wages at her pre-COVID rate of pay.

34.     Plaintiff asserts Inmar lifted the tiered salary reduction plan for all employees in or about the end of the second quarter of 2020.

/ / /

/ / /

/ / /

/ / /

/ / /

# VII.   CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

**Discrimination Based on Gender in Violation of the FEHA**
**[Cal. Gov. Code §12940(a)] on behalf of Plaintiffs Davis and Rhodes**

35.     Plaintiffs Davis and Rhodes reallege and incorporate by reference the foregoing, as though fully set forth herein.

36.     At all times material to this complaint, Plaintiffs Davis and Rhodes were employees within the meaning of California Government Code Section 12900, et seq., the Fair Employment and Housing Act ("FEHA").

37.     Defendant is an employer within the meaning of the FEHA in that it is a business organization with 5 or more employees doing business in the State of California.

38.     It is an unlawful employment practice for an employer to discriminate against an employee on account of her gender, including paying a female employee less than a male employee on account of her gender and refusing to promote a female employee based on gender.

39.     The above-described actions and omissions of Defendant constitute discrimination based on gender, in violation of the FEHA, in that Defendant terminated Plaintiffs Davis and Rhodes on account of their gender.

40.     Furthermore, with respect to Plaintiff Davis, the above-described actions and omissions of Defendant constitute discrimination based on gender, in violation of the FEHA, in that Defendant paid Davis less than similarly situated male employees.

41.     As a direct and further proximate result of the above violations of their rights, Plaintiffs Davis and Rhodes have suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

42.     As a result of Defendant's unlawful acts, Plaintiffs Davis and Rhodes are entitled to compensatory damages, equitable relief, attorneys' fees and costs.

43.    Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiffs Davis and Rhodes, and/or with conscious disregard of the rights and safety of Plaintiffs, and/or with an improper and evil motive amounting to malice.  Plaintiffs Davis and Rhodes are thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiffs request relief as set forth below

## SECOND CAUSE OF ACTION

### Retaliation
### [Cal. Gov. Code §12940(h)] on behalf of Plaintiffs Davis and Rhodes

44.    Plaintiffs Davis and Rhodes reallege and incorporate by reference the foregoing, as though fully set forth herein.

45.    Plaintiff Davis engaged in protected activity by complaining about gender discrimination to, among others, her supervisor a Vice President at Inmar.

46.    Plaintiff Rhodes engaged in protected activity by complaining about, and filing a complaint regarding, discrimination (based on gender, pregnancy, and CFRA/FMLA leave).

47.    Following the protected activity of Plaintiffs, Defendant retaliated against Plaintiffs Davis and Rhodes.  The retaliatory acts engaged in by Defendant included, but were not limited to the following: demoting Plaintiff Davis; failing to promote Plaintiff Rhodes; terminating Plaintiffs Davis and Rhodes; forcing Rhodes to supervise employees who were equally ranked and forcing Rhodes to report to a male counterpart instead of directly to the senior leadership team; forcing Plaintiffs to assume work responsibilities not commensurate with their title and/or pay; excluding and isolating Plaintiff Davis from meetings and denying credit for her work product; depriving Plaintiffs of work opportunities for which they were qualified within the company, in lieu of termination.

48.    The protected activities of Plaintiffs Davis and Rhodes were a motivating reason for Defendant's retaliatory conduct.

49.    Defendant's retaliatory conduct was in violation of Cal. Govt. Code §

12940(h).

50.     As a direct and further proximate result of the above violations of ther rights under the FEHA, Plaintiffs Davis and Rhodes have suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

51.     As a result of Defendant's unlawful acts, Plaintiffs Davis and Rhodes are entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

52.     Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiffs Davis and Rhodes, and/or with conscious disregard of the rights and safety of Plaintiffs, and/or with an improper and evil motive amounting to malice.  Plaintiffs Davis and Rhodes are thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiffs request relief as set forth below.

### THIRD CAUSE OF ACTION

**Wrongful Termination in Violation of Public Policy**
**on behalf of Plaintiffs Davis and Rhodes**

53.     Plaintiffs Davis and Rhodes realleges and incorporates by reference the foregoing, as though fully set forth herein.

54.     Defendant terminated Plaintiff Davis in retaliation for her complaints about gender discrimination.

55.     Defendant terminated Plaintiff Rhodes in retaliation for her complaints about discrimination (based on gender, pregnancy, and CFRA/FMLA leave).

56.     Defendant's actions in terminating Plaintiffs Davis and Rhodes under the circumstances alleged herein violate the fundamental policies of the State of California embodied, among elsewhere, in the California Government Code § 12940 *et seq.* Defendant's conduct in terminating Plaintiffs Davis and Rhodes under these circumstances constitutes a wrongful termination in violation of public policy.

57.     As a direct and further proximate result of the above violations of ther rights,

Plaintiffs Davis and Rhodes have suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

58.     As a result of Defendant's unlawful acts, Plaintiffs Davis and Rhodes are entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

59.     Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiffs Davis and Rhodes, and/or with conscious disregard of the rights and safety of Plaintiffs, and/or with an improper and evil motive amounting to malice.  Plaintiffs Davis and Rhodes are thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiffs request relief as set forth below.

## FOURTH CAUSE OF ACTION

### Failure to Prevent Harassment, Discrimination, or Retaliation
**[Cal. Gov. Code §12940(k)] on behalf of Plaintiffs Davis and Rhodes**

60.     Plaintiffs Davis and Rhodes reallege and incorporate by reference the foregoing, as though fully set forth herein.

61.     At all times material to this complaint, Plaintiffs Davis and Rhodes were employees within the meaning of the FEHA.

62.     Defendant is an employer within the meaning of the FEHA.

63.     Cal. Govt. Code § 12940 (k) requires employers to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment from occurring.

64.     Plaintiff Davis was subjected to discrimination on account her gender and retaliation.

65.     Plaintiff Rhodes was subjected to discrimination on account her gender and retaliation.

66.     Defendant failed to take all reasonable steps to prevent discrimination and/or harassment from occurring.

67.     As a direct and further proximate result of the above violations of ther rights, Plaintiffs Davis and Rhodes have suffered damages in the form of past and future wage

loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

68.     As a result of Defendant's unlawful acts, Plaintiffs Davis and Rhodes are entitled to compensatory damages, equitable relief, attorneys' fees, and costs.

69.     Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiffs Davis and Rhodes, and/or with conscious disregard of the rights and safety of Plaintiffs, and/or with an improper and evil motive amounting to malice.  Plaintiffs Davis and Rhodes are thus entitled to recover punitive damages from Defendant in an amount according to proof.

WHEREFORE, Plaintiffs request relief as set forth below.

### FIFTH CAUSE OF ACTION

**Discrimination in Payment on Basis of Sex**
**[Cal. Lab. Code § 1197.5] on behalf of Plaintiff Davis**

70.     Plaintiff Davis realleges and hereby incorporates by reference the foregoing paragraphs, as though fully set forth herein.

71.     Defendants employed Plaintiff Davis and one or more members of the opposite sex who performed substantially similar work under similar working conditions.

72.     Plaintiff Davis was paid a lower wage than the members of the opposite sex who were performing substantially similar work under similar working conditions.

73.     Inmar has subjected Plaintiff Davis to discriminatory pay practices, including a discriminatory system of determining salaries and other compensation incentive, which results in employees performing the same tasks receiving different compensation and other forms of discrimination affecting pay.

74.     The differential in pay between make and female employees was not due to seniority, merit, quantity, or quality or production, a bona fide factor other than sex, such as education, training, or experience, but was due to gender.  In the alternative, to the extent that Defendant relied upon one or more of these factors, said factor(s) were not reasonably applied and did/do not account for the entire wage differential.

75.     Defendant did the acts alleged herein willfully. Therefore, a three-year statute of limitations applies to such violations, pursuant to California Equal Pay Act, Cal. Lab. Code § 1197.5(h)

76.     As a result of Defendant's conduct alleged in this Complaint and/or Defendant's willful, knowing, and intentional discrimination, plaintiff Davis has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

77.     Because of Defendant's unlawful acts, Plaintiff Davis is entitled to the amount of wages, and interest thereon, of which she was deprived by reason of the violation, as well as an equal amount as liquidated damages.

78.     Plaintiff Davis is therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

79.     Attorneys' fees should be awarded under California Labor Code § 1194.5(g).

WHEREFORE, Plaintiff Davis requests relief as set forth below.

## SIXTH CAUSE OF ACTION

### Denial of Equal Pay for Equal Work
### The Fair Labor Standards Act of 1938, as amended by The Equal Pay Act, 29 U.S.C. §§ 206, et seq. on behalf of Plaintiff Davis

80.     Plaintiff Davis realleges and hereby incorporates by reference the foregoing paragraphs, as though fully set forth herein.

81.     Defendant has discriminated against Davis in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, et seq., as amended by the Equal Pay Act ("EPA").  Inmar has paid Plaintiff Davis less than similarly-situated male colleagues performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, ash which are performed under similar working conditions.

82.     Inmar has subjected Plaintiff Davis to discriminatory pay practices, including a discriminatory system of determining salaries and other compensation incentive, which results in employees performing the same tasks receiving different

compensation and other forms of discrimination affecting pay.

83.    The differential in pay between make and female employees was not due to seniority, merit, quantity, or quality or production, but was due to gender.

84.    Inmar has caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the EPA. Moreover, the foregoing conduct constitutes a willful violation, within the EPA within the meaning of 29 U.S.C. § 255(a).  Because Inmar has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

85.    As a result of Inmar's conduct alleged in this Complaint, Plaintiff Davis has suffered and will continue to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

86.    By reason of Inmar's discrimination, Plaintiff Davis is entitled to all legal and equitable remedies available for violations of the EPA including liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).  Attorneys' fees should be awarded under 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff Davis requests relief as set forth below.

## SEVENTH CAUSE OF ACTION

### Fraud/Intentional Misrepresentation on behalf of Plaintiff Davis and Plaintiff Rhodes

87.    Plaintiff Davis and Plaintiff Rhodes reallege and hereby incorporate by reference the foregoing paragraphs, as though fully set forth herein.

88.    Plaintiffs are informed and believe and thereon allege that Defendant, through its authorized representatives and agents, made misrepresentations to Plaintiffs as to a past or existing fact (and/or concealed or failed to disclose such facts).  Plaintiffs are informed and believe and thereon allege that Defendant knew the representations were false when made, and/or made such representations recklessly. Plaintiffs are informed and believe and thereon allege that Defendant made such representations with the intent

to defraud Plaintiffs (i.e., with the intent that Plaintiffs would act in reliance thereon). Plaintiffs did reasonably rely on Defendant's representations, and their reliance was a substantial factor in causing harm to Plaintiffs.

89.    As set forth in detail, Defendant made the following misrepresentation to Plaintiff Davis:

a.    The March 2019 job offer for a Vice President position at Inmar, which she accepted, and which later Plaintiff Davis inadvertently learned had been de-leveled to a Director title;

b.    Representations from Plaintiff Davis' supervisor that she was working with senior leadership to up level Plaintiff Davis to a cross-functional role heading up product development and go to market strategy and positioning;

c.    Told in or about early 2020 that a company-wide reduction in salary would spare layoffs, thereby inducing agreement to a 25% salary reduction that was in effect at the time of Plaintiff Davis' termination;

d.    Reassurance from Plaintiff Davis' supervisor of job security beginning in or about summer 2019, through the onset of the COVID pandemic, and up through Plaintiff Davis' April 2020 layoff date.

90.    As set forth in detail, Defendant made the following misrepresentations to Plaintiff Rhodes:

a.    That Inmar's March 2019 job offer to Plaintiff Rhodes down leveling her position from Vice-President to Director was common practice for Inmar across the board (regardless of protected characteristics);

b.    That Plaintiff Rhodes' supervisor was actively working with HR to promote Plaintiff Rhodes to a job title commensurate with her job responsibility and assignments and that she (Rhodes' supervisor) would prioritize the work needed on her end because Plaintiff Rhodes deserved the promotion;

c.    Told in or about early 2020 that a company-wide reduction in salary would spare layoffs, thereby inducing agreement to a 25% salary reduction that was in

effect at the time of Plaintiff Rhodes' termination.

91.     When Defendant made the misrepresentations/concealed the facts as alleged herein, Defendant knew them to be false and/or made them recklessly and without regard for the truth of the representations, and with the intention to deceive and defraud Plaintiff Davis and Plaintiff Rhodes and induce Plaintiff Davis and Plaintiff Rhodes to act in reliance on these representations in the manner alleged herein, or with the expectation that Plaintiffs would so act.

92.     Plaintiff Davis and Plaintiff Rhodes did reasonably rely on Defendant's representations, and their reliance was a substantial factor in causing harm to Plaintiff Davis and Plaintiff Rhodes.

93.     As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff Davis and Plaintiff Rhodes has suffered special damages including but not limited to past and future loss of income, benefits, and other damages to be proven at the time of trial.

94.     As a direct and proximate result of the unlawful conduct of Defendant, Plaintiff Davis and Plaintiff Rhodes have suffered general damages including but not limited to shock, embarrassment, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

95.     The unlawful conduct alleged above was engaged in and/or ratified by the officers, directors, supervisors and/or managing agents of Defendant, who were acting at all times relevant to this Complaint within the scope and course of their employment. Defendant is, therefore, liable for the conduct of said agents and employees under the Doctrine of Strict Liability.

96.     Defendant committed the acts herein alleged maliciously, fraudulently, and oppressively in conscious disregard for Plaintiff Davis and Plaintiff Rhodes' rights. Defendant committed and/or ratified the acts alleged herein.  These acts were committed with knowledge of employees' lack of fitness in the workplace but were allowed to proceed, by officers, directors, and/or managing agents of Defendant.  Plaintiff Davis and

Plaintiff Rhodes are, therefore, entitled to recover punitive damages from Defendant in an amount according to proof at trial.

WHEREFORE, Plaintiffs request relief as set forth below.

## EIGHTH CAUSE OF ACTION

### Failure to Pay Wages at Time of Termination
### Violation of California Labor Code § 201 *et seq. o*n behalf of Plaintiff Davis and Plaintiff Rhodes

97.    Plaintiff Davis and Plaintiff Rhodes re-allege and incorporate herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

98.    At the time of Plaintiff Davis and Plaintiff Rhodes termination, Defendants knowingly and willfully failed to pay Plaintiffs all of the wages they had earned, as alleged herein and above.

99.    Pursuant to California Labor Code §§ 201 – 203, Plaintiff Davis and Plaintiff Rhodes are entitled by law to receive all of their earned and unpaid wages, including accrued and unused vacation time and/or non-discretionary bonuses, at the time of Plaintiff Davis and Plaintiff Rhodes' termination.

100.    Defendants and each of them knowingly, intentionally and willfully failed to pay to Plaintiff Davis and Plaintiff Rhodes all of their earned and unpaid wages, at the time of their termination.

101.    Pursuant to California Labor Code § 203, Plaintiff Davis and Plaintiff Rhodes are entitled to a waiting time penalty, calculated based on thirty (30) days of their proper and correct average daily rate, or according to proof at trial, whichever is greater.

WHEREFORE, Plaintiffs request relief as set forth below.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Davis and Rhodes request judgment against Defendant as follows:

1.    Compensatory damages on all causes of action;

2.    Punitive damages on the First through Fourth Causes of Action, and the

Seventh Cause of Action.

3.     For unpaid wages and liquidated damages on the Fifth, Sixth, and Eighth Causes of Action;

4.     For attorneys' fees with respect to the First through Second and Fourth through Sixth and Eighth Causes of Action

5.     For statutory and/or civil penalties as provided by law;

6.     Costs of suit;

7.     For such other and further relief as the Court deems just and proper.

## IX. JURY DEMAND

Plaintiff Davis and Plaintiff Rhodes demand a trial by jury on all issues triable of right by jury.


DATED:  May 19, 2021                    TOP LAW PC


                                        By: _____/s/ Denise K Top_____
                                            Denise K. Top
                                        Attorneys for Plaintiffs
                                        Catherine "Cassie" Davis and Julia Rhodes

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                              GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                          KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 20, 2020

Julia Rhodes
1296 Laurel St 3
San Carlos, California 94070

RE:     **Notice to Complainant**
        DFEH Matter Number: 202005-10211020
        Right to Sue: Rhodes / Inmar Intelligence

Dear Julia Rhodes:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents.  If you do not have an attorney, you must serve the complaint yourself.
Please refer to the attached Notice of Case Closure and Right to Sue for information
regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of
Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 20, 2020

RE:     **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 202005-10211020
        Right to Sue: Rhodes / Inmar Intelligence

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                   GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                      KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 20, 2020

Julia Rhodes
1296 Laurel St 3
San Carlos, California 94070

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202005-10211020
      Right to Sue: Rhodes / Inmar Intelligence

Dear Julia Rhodes,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 20, 2020 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Julia Rhodes                                        DFEH No. 202005-10211020

                            Complainant,

vs.

Inmar Intelligence
635 Vine Street
Winston Salem, North Carolina 27101

                            Respondents
_____

1. Respondent **Inmar Intelligence**  is an **employer** subject to suit under the
California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Julia Rhodes**, resides in the City of **San Carlos** State of **California.**

3. Complainant alleges that on or about **April 14, 2020**, respondent took the
following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, age (40 and
over), sexual harassment- hostile environment.

**Complainant was discriminated against** because of complainant's sex/gender,
age (40 and over), sexual harassment- hostile environment and as a result of the
discrimination was laid off, denied hire or promotion, denied equal pay, denied any
employment benefit or privilege, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted
any form of discrimination or harassment, participated as a witness in a
discrimination or harassment complaint and as a result was laid off, denied hire or
promotion, denied any employment benefit or privilege.

**Additional Complaint Details:**

-1-
*Complaint – DFEH No. 202005-10211020*

Date Filed: May 20, 2020

1   VERIFICATION

2   I, **Julia Rhodes**, am the **Complainant** in the above-entitled complaint.  I have read
3   the foregoing complaint and know the contents thereof.  The same is true of my own
    knowledge, except as to those matters which are therein alleged on information and
4   belief, and as to those matters, I believe it to be true.

5   On May 20, 2020, I declare under penalty of perjury under the laws of the State of
    California that the foregoing is true and correct.
6

7                                                                    **San Carlos, CA**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                            -2-
                        *Complaint – DFEH No. 202005-10211020*
28
    Date Filed: May 20, 2020



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 18, 2021

Julia Rhodes
1296 Laurel St 3
San Carlos, California 94070

RE:     **Notice to Complainant**
        DFEH Matter Number: 202005-10211020
        Right to Sue: Rhodes / Inmar Intelligence

Dear Julia Rhodes:

Attached is a copy of your **amended** complaint of discrimination filed with the
Department of Fair Employment and Housing (DFEH) pursuant to the California Fair
Employment and Housing Act, Government Code section 12900 et seq.

Pursuant to Government Code section 12962, DFEH will not serve these documents on
the employer.  You or your attorney must serve the complaint.  If you do not have an
attorney, you must serve the complaint yourself.

The amended complaint is deemed to have the same filing date of the original
complaint.  This is not a new Right to Sue letter.  The original Notice of Case Closure
and Right to Sue issued in this case remains the only such notice provided by the
DFEH.  (Cal. Code Regs., tit. 2, § 10022.)

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Julia Rhodes                                                  DFEH No. 202005-10211020

                          Complainant,

vs.

Inmar Intelligence
635 Vine Street
Winston Salem, North Carolina 27101

                          Respondents

_____

**1.** Respondent **Inmar Intelligence**  is an **employer Inmar Intelligence** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Julia Rhodes**, resides in the City of **San Carlos,** State of **California.**

**3**. Complainant alleges that on or about **April 16, 2020**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, age (40 and over), sexual harassment- hostile environment.

**Complainant was discriminated against** because of complainant's sex/gender, age (40 and over), sexual harassment- hostile environment and as a result of the discrimination was laid off, denied hire or promotion, denied equal pay, denied any employment benefit or privilege, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, participated as a witness in a discrimination or harassment complaint and as a result was terminated, laid off, denied hire or promotion, denied any employment benefit or privilege.

Date Filed: May 20, 2020
Date Amended: May 18, 2021

**Additional Complaint Details:** You Technology hired me in August 2016 as Vice President, Product Management, reporting to the CEO, Cheryl Black.  In or about November 2018 as a result of You Technology's acquisition by Inmar, Inc. I received a job offer from Inmar for a Director, Product Management role, reporting to Ms. Black, who was also demoted to a VP at Inmar. I understood my role with Inmar to be substantially similar to my work for You Technology. I was told that the down-leveling was a common practice for Inmar across the board. I relied on this representation and subsequently accepted the job offer and my employer transitioned from You Technology to Inmar.

During my employment with Inmar, I became informed and believe that my position was unfairly "leveled" due to my gender. I observed this Inmar practice towards other similarly situated employees. Notably, just prior to my termination, I was in discussions with my supervisor, Cheryl Black, regarding the fact that, as a female, I was being unfairly "leveled" when compared to my male peers and even lower-level employees. In fact, I was asked to manage male employees that were given the same title level as my own. I expressed to Ms. Black that this discrimination had to be resolved.

I am informed and believe discriminatory "leveling," and other forms of discrimination rampant among Inmar's "male-oriented" culture. I also was aware of senior leaders having intimate sexual relationships within their organizations; open discussion of certain senior leaders having a "type" in regards to women they prefer to work with and openly joking about how you "better watch out" because "you're not his type"; open discussion and joking that senior leaders only want to hear from male colleagues and that you'll be most effective if you pass your information through a straight, white, male colleague. This is not an exhaustive list.

This was confirmed when my skip-level manager, another senior leader at the company, openly stated in a face-to-face meeting in the Daly City office that receiving updates on development from me "wasn't going to work for him" and he instead wanted to receive them from a male counterpart despite that person not being involved in or familiar with any details of the project.  I reported these gender-based concerns to my supervisor.  I am informed and believe Inmar did nothing to address my concerns.

In or about early April 2020, after my attempt to promote a pregnant direct report was denied by Inmar, I reported to HR that I believed it was discriminatory to deny someone a promotional opportunity because of parental leave.  Shortly thereafter, I received notice that I would be laid off from Inmar effective April 16, 2020 under the pretext of the COVID pandemic. Notably, the company had just notified me it was reducing my salary as a cost-savings measure to retain employees through the pandemic.

Although the layoff was reportedly based on Covid-19 pandemic hardship, I understand that the CEO later advised in a recorded company-wide meeting that the terminations had been planned before the pandemic, however the pandemic "accelerated" the terminations and allowed for an excuse for some of the terminations.  I am informed and believe Inmar terminated executive-level, high performing female employees, while it retained poorer performing male employees with reduced performance metrics.

Date Filed: May 20, 2020
Date Amended: May 18, 2021

Additionally, claiming the Covid-19 pandemic as cause for termination is not supported by the evidence. For example, David Mounts specified that inflow and outflows would have to match throughout the various areas of the company however my business unit was closest to meeting its EBITDA targets while other divisions that both missed their Q1 targets and had higher personnel expenditures did not experience terminations.

Furthermore, another stated reason for my termination was the company was going to focus on technical work, with no new feature development in 2020, however a recent press release describing an expansion of Inmar's executive team with the appointment of Spencer Baird as Executive In Residence states that Inmar is appointing this executive to "guide and accelerate the development of solutions across marketing, commerce and operations to facilitate and accelerate the industry's digital transformation." This announcement describes a role I may have filled. Instead, I was laid off, and the opportunity was presented to and filled by an external male hire.

I am informed and believe Inmar terminated my employment because I complained about experienced and perceived gender discrimination within the company.  I am further informed and believe Inmar terminated my employment under the pretext of Covid-19 hardship.

-3-

*Complaint – DFEH No. 202005-10211020*

Date Filed: May 20, 2020
Date Amended: May 18, 2021

VERIFICATION

I, **Julia Rhodes**, am the **Complainant** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On May 18, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Carlos, CA**

Date Filed: May 20, 2020
Date Amended: May 18, 2021

# EXHIBIT B



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 19, 2021

Denise Top
180 Grand Avenue, Ste. 1300
Oakland, California 94612

RE:     **Notice to Complainant's Attorney**
         DFEH Matter Number: 202105-13603319
         Right to Sue: Davis / Inmar, Inc.

Dear Denise Top:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                          KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 19, 2021

RE:     **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 202105-13603319
        Right to Sue: Davis / Inmar, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

May 19, 2021

Catherine Davis
180 Grand Avenue, Ste. 1300
Oakland, California 94612

RE:    **Notice of Case Closure and Right to Sue**
         DFEH Matter Number: 202105-13603319
         Right to Sue: Davis / Inmar, Inc.

Dear Catherine Davis:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective May 19, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete.  To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Catherine Davis                                                    DFEH No. 202105-13603319

Complainant,

vs.

Inmar, Inc.
635 VIne Street
Winston Salem, North Carolina 27101

Respondents

_____

**1.** Respondent **Inmar, Inc.**  is an **employer Inmar, Inc.** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Catherine Davis**, resides in the City of **Oakland,** State of **California.**

**3**. Complainant alleges that on or about **April 16, 2020**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, other, sexual harassment- hostile environment.

**Complainant was discriminated against** because of complainant's sex/gender, age (40 and over), other, sexual harassment- hostile environment and as a result of the discrimination was terminated, laid off, denied hire or promotion, reprimanded, denied equal pay, denied any employment benefit or privilege, other, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, laid off, denied hire or promotion, reprimanded, denied equal pay, demoted, denied any employment benefit or privilege, other, denied work opportunities or assignments.

Date Filed: May 19, 2021

1   **Additional Complaint Details:** I started working for SoftCoin in about March of 2004 as
    Creative Director. In or about 2009, You Technology acquired SoftCoin and me, as an
2   executive-level employee.  I subsequently rebranded You Technology to YouTech,
    designing the logo and overhauling the strategic positioning, narrative and messaging. I also
3   oversaw Marketing and PR and managed a team of designers and front-end engineers to
    build the product.  In approximately March 2019, Inmar acquired YouTech.  As part of the
4   acquisition, Inmar offered me a Vice President, Strategic Services position, which I
    accepted.  Inmar also acknowledged my original hire date in March 2004 with YouTech to
5   be my recorded service date known at Inmar.  I continued to report to my previous YouTech
    manager, Cheryl Black, who during the YouTech acquisition was demoted from CEO of
6   YouTech to a VP of Inmar.
7   Despite my years of experience and highly cross-functional background in leadership,
    design, marketing and development, from the start, the male dominated, and male oriented
8   Inmar work culture became a clear obstacle for me to establish my role and position within
    Inmar.  For instance, there were open discussions about certain senior leaders having a
9   "type" in regard to women they prefer to work with and joking about how women employees
    "better watch out" if they were not a male leader's "type." It was well known amongst female
10  employees that senior leaders (all male) only wanted to hear from male colleagues and that
    female employees would be most effective if they passed information through a straight,
11  white, male colleague.  I reported what I believed to be gender discrimination to my
    supervisor on multiple occasions.  To my knowledge, Inmar did nothing to respond to these
12  known gender issues.
13  Week after week my one-on-one meetings with my supervisor were canceled and I found
    myself excluded from calls, often involving review or discussion of work I have produced or
14  ideated.  I was being actively excluded and did not receive credit for my work. I am informed
    and believe that at least one male colleague took credit for my work, which I reported to my
15  supervisor. When I reported what I believed to be unfair treatment, I was consistently
    assured by executive leadership of my job security.  My supervisor confirmed it was a white-
16  male-dominated work culture and provided me tips on how to work within that known
    structure so as to manipulate the white, male leadership.
17  After the COVID pandemic hit, I was told that a company-wide reduction in salaries would
    spare layoffs.  I questioned the company's proclaimed "COVID" motive, given Inmar
18  Intelligence's focus on tech-enabled services for retailers in the grocery sector- an industry
    undergoing rapid digital transformation and growth as a result of COVID. I also questioned
19  the tiered salary reduction plan to have obvious discriminatory impact on the higher-level
    women working in the SF/Bay Area.  I shared my disappointment/concerns with my
20  supervisor, whom to the best of my knowledge did nothing about it.
21  Within weeks, I was notified the company decided to lay me off, along with the other highest
    level female leader in the San Francisco office.  I was told Inmar did not like how much I was
22  making.  I am informed and believe male colleagues of equal rank to have successfully
    negotiated and established roles within Inmar. I witnessed female counterparts work
23  tirelessly, with little recognition or promotion.  I am informed and believe these male
    colleagues were spared layoff selection, despite also living in the same or similar city
24  centers where salaries are justifiably higher due to the added cost of living.  I am further
    informed and believe that a white, male colleague in the San Francisco office, was spared
25  layoff, and stayed as a Director designing product, which I had direct experience and
    oversight doing for years.   Furthermore, I have knowledge of male colleagues doing
26

27                                              -2-
28
    Date Filed: May 19, 2021

1  substantially similar work, living in more affordable cities, who were paid more than Inmar
   paid me.
2  During layoffs Inmar informed me that there would be no new development for my division
   due to COVID, and this was the reason for my termination.  I believe this reason to be as
3  pretext, as the work I was producing prior to termination was across divisions.  In addition, a
   May 2020 Inmar press release announced Inmar's appointment of an executive in residence
4  (male) tasked to help "guide and accelerate the development of solutions across
   marketing…and accelerate the industry's digital transformation," which evidences Inmar's
5  efforts to ramp up its development to meet the demand of retail grocer digital coupon
   savings and digital marketing initiatives amid a pandemic.
6  I believe my termination (effective April 16, 2020) was due to gender discrimination and
   retaliation for raising what I reasonably perceived to be discriminatory practices.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          -3-
                              *Complaint – DFEH No. 202105-13603319*
28
   Date Filed: May 19, 2021

VERIFICATION

I, **Denise K Top**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On May 19, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Oakland, CA**

Date Filed: May 19, 2021