UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE "CASSIE" DAVIS, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>INMAR, INC.,<br><br>   Defendant. | Case No. 3:21-cv-03779-JD<br><br>**ORDER RE SUMMARY JUDGMENT AND TRIAL** |

Plaintiffs Catherine "Cassie" Davis and Julia Rhodes worked at YouTech when defendant Inmar, Inc. (Inmar) acquired it in March 2019. Dkt. No. 27 ¶ 17. Inmar terminated their employment in April 2020. Dkt. No. 27 ¶¶ 33, 45. In a first amended complaint, Davis and Rhodes allege claims for gender discrimination, retaliation, wrongful termination, and failure to prevent harassment, discrimination, or retaliation, under the Fair Employment and Housing Act (FEHA), Cal Gov. Code § 12940, *et seq.*; discrimination in payment on the basis of sex, with respect to Davis only, Cal. Lab. Code § 1197.5; fraud; and failure to pay wages at time of termination, in violation of Section 201 of the California Labor Code. The parties stipulated to the dismissal of Davis' claim for denial of equal pay for equal work under the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act, 29 U.S. § 206, *et seq*. Dkt. No. 66.

Inmar asks for summary judgment on the remaining claims. The parties' familiarity with the record is assumed, and summary judgment is denied.[1]

---

[1] Plaintiffs filed an opposition late, which they attributed to technical difficulties. *See* Dkt. Nos. 100, 101, 109. The Court will accept the untimely filing.

**DISCUSSION**

Summary judgment, or more aptly judgment without a trial, has its place in federal procedure, but only when there is no dispute of material fact, and the law favors the moving party. *See Fed. Trade Comm'n v. D-Link Sys., Inc.*, No. 17-CV-00039-JD, 2018 WL 6040192 (N.D. Cal. Nov. 5, 2018. Parties "may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant[s] sho[w] that there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court may dispose of less than the entire case and even just portions of a claim or defense." *CZ Servs., Inc. v. Express Scripts Holding Co.*, No. 3:18-CV-04217-JD, 2020 WL 4368212, at *2 (N.D. Cal. July 30, 2020) (citing *Smith v. Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014)).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. *Id.* To determine whether a genuine dispute as to any material fact exists, the Court views the evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn" in that party's favor. *Id.* at 255. The moving party may initially establish the absence of a genuine issue of material fact by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It is then the nonmoving party's burden to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 323-24. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The burden falls on the parties to identify or rebut disputes of fact. The Court will not root through the record an do this work for them. *CZ Servs., Inc.*, 2020 WL 4368212, at *3.

## I. GENDER DISCRIMINATION

For the gender discrimination claim, plaintiffs say: (1) they were terminated by Inmar because of their gender, Dkt. No. 27 ¶ 51; (2) Davis was paid less than similarly situated male employees, *id.* ¶¶ 51-52; and (3) they were unfairly "down-leveled" when they received job titles beneath their former titles and their level of work, *id.* ¶¶ 20, 36.

Gender discrimination claims are subject to the *McDonnell Douglas* burden-shifting standard. *Guz v. Bechtel National, Inc.,* 24 Cal. 4th 317, 355 (2000); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The parties do not dispute that plaintiffs have made out a prima facie case.

Inmar says it is entitled to summary judgment because it has identified legitimate, nondiscriminatory reasons for the challenged actions. Dkt. No. 93 at 10-16; *see Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005). The record indicates that these reasons are subject to material disputes of fact. For example, Inmar says that plaintiffs' compensation and job titles were determined using established company policy. Dkt. No. 93 at 14-16. But Inmar offers only individual counterexamples to prove its case, and provides no documentation of a generally applicable, gender-neutral company policy. *Id.* So too for whether the terminations were pretextual, because the nondiscriminatory "reduction in force" plan did not include plaintiffs' roles. Dkt. No. 101 at 19-20. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996). Other evidence raises fact questions about intent. *See, e.g.,* Dkt. No. 115-9, 197:16-198:10 (describing CTO Kerr asking to receive updates on Rhodes's work from a male employee, instead of Rhodes); Dkt. No. 108-3 ¶ 13 (describing a female employee being "snapped at," "berated and yelled out by" the CEO for being "embarrassed by" a male employee). These disputed claims will go to trial.

## II. RETALIATION

The FEHA makes it unlawful for an "employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this [Act] or because the person has filed a complaint, testified, or assisted in any proceeding under this [Act]." Cal. Gov't. Code § 12940(h). Davis and Rhodes say they were terminated because

3

1  they complained about gender discrimination in the workplace, among other reasons. Dkt. No.
2  101 at 24. Davis shared concerns about gender discrimination with her supervisor, Cheryl Black,
3  in March and April 2020. Dkt. No. 101 at 24-25. On April 13, 2020, Gregg Kerr, Inmar's CTO,
4  said Davis would be terminated. *Id.* Rhodes raised concerns to Black about being down-leveled
5  and the "male-dominated culture" of Inmar on February 17, 2020. *Id.* at 25. Kerr said Rhodes'
6  would be terminated on March 3, 2020. *Id.*

7  Inmar's sole contention for summary judgment is that plaintiffs did not allege Kerr was
8  personally aware of the discrimination communications. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d
9  793, 796 (9th Cir. 1982). But the record indicates that Black was significantly involved in the
10  terminations. Dkt. No. 101 at 25; Dkt. No. 107-13 at ECF p. 10; Dkt. No. 107-14. This is enough
11  for plaintiffs' retaliation claims to go to trial. *See Morgan v. Regents of Univ. of Cal.*, 88 Cal.
12  App. 4th 52, 70 (2000) ("[A]gency sufficient to bind an employer may exist where the declarant is
13  not the actual decisionmaker but has significant involvement in the process leading to a challenged
14  decision.").

## III.  OTHER FEHA CLAIMS

16  Because plaintiffs have raised triable fact issues with respect to gender discrimination and
17  retaliation, summary judgment is also denied with respect to their dependent claims for wrongful
18  termination in violation of public policy, and failure to prevent harassment, discrimination, or
19  retaliation, in violation of the FEHA.

## IV.  PAY DISCRIMINATION

21  Section 1197.5(a) of the California Labor Code prohibits employers from paying
22  employees of one gender less than employees of another gender "for equal work on jobs the
23  performance of which requires equal skill, effort, and responsibility, and which are performed
24  under similar working conditions." Cal. Labor Code § 1197.5(a). Davis has proffered multiple
25  comparators, and relies on two specific individuals to oppose Inmar's motion for summary
26  judgment. Dkt. No. 101 at 27. Inmar objects to one of Davis' comparators as improperly
27  disclosed, and says that, as a result, Davis has only one comparator and so cannot make out a
28  prima facie case of pay discrimination. *See* Dkt. No. 93 at 22; Dkt. No. 115 at 12-13.

4

Not so.  Although the Court may look "critically upon the use of a single comparator to make out a prima facie case," reliance on a single comparator is not inherently fatal to a claim, unless other appropriate comparators were improperly ignored.  *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 918 (9th Cir. 1983).  Davis' claim may be weakened by insufficient comparators, but granting summary judgment would be premature.

For the remaining comparator, the job duties were not so dissimilar to Davis' that a reasonable factfinder would find the comparison to be off base.  They worked on the same product, and in the same Job Family Group.  Dkt. No. 101-8; Dkt. No. 108-3.  They also shared several of the same job tasks.  Dkt. No. 108-3 ¶¶ 4-6.  "[W]hether two employees are similarly situated is ordinarily a question of fact."  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010).  This "fact-intensive inquiry" will go to a jury.  *See id.* at 1157.

## V.    FRAUD

Several fact issues exist with respect to plaintiffs' fraud claim, including whether Rhodes and Davis were falsely told that they would be promoted to Vice President (VP) roles.  *See* Dkt. No. 101 at 30; Dkt. No. 102 ¶¶ 9, 14, 16; Dkt. No. 103 ¶¶ 2-4.  Inmar says that this disputed fact is immaterial, because Davis and Rhodes held themselves out as VPs during their post-Inmar job searches.  Dkt. No. 115 at 15.  This is rather beside the point.  If plaintiffs had known there was no promotion, they might have declined the job offers or left Inmar earlier, and enjoyed arguably favorable pre-COVID job market conditions.  *See* Dkt. No. 101 at 30.

## VI.   FAILURE TO PAY WAGES

When plaintiffs were terminated, their accrued vacation was paid at a COVID-reduced salary instead of their regular salary.  The Court concluded earlier that the failure to pay wages claim turns "on the question of what constitutes Plaintiffs' final rate of pay."  Dkt. No. 25 at 12.  Inmar says, without anything in the way of evidence, that the 25% salary reduction was the final rate of pay.  Dkt. No. 93 at 25.  This is subject to a factual dispute.  Plaintiffs have pointed to evidence that the CEO of Inmar said pay reduction was "temporary."  *See* Dkt. No. 101 at 13-14; Dkt. No. 92-14.  Mounts expressly stated that the reduction would be "for three months."  Dkt.

No. 92-14 at 6:10.  Fact issues remain as to whether the 25% reduction should have factored into plaintiffs' "final rate of pay."

## CONCLUSION

Summary judgment is denied.  A jury trial is set for April 21, 2025, at 9:00 a.m., and a pretrial conference is set for April 3, 2025, at 1:30 p.m.

**IT IS SO ORDERED.**

Dated:  June 28, 2024

JAMES DONATO
United States District Judge